Beth Kenyon v. Commissioner. Beth Kenyon, Transferee v. Commissioner. Ella Byron Kenyon, Transferee v. Commissioner. Ella Byron Kenyon v. Commissioner. Ralph Kenyon v. Commissioner. Ralph Kenyon, Transferee v. Commissioner. Patsy Ruth Kenyon v. Commissioner. Patsy Ruth Kenyon, Transferee v. Commissioner. National Home and Auto Stores, an Association (Dissolved), Ralph Kenyon, Formerly President v. Commissioner.
Kenyon v. Commissioner
Docket Nos. 30094, 30095, 30096, 30097, 30099, 30100, 30101, 30102, 30103.
United States Tax Court
1952 Tax Ct. Memo LEXIS 22; 11 T.C.M. (CCH) 1156; T.C.M. (RIA) 52342; November 28, 1952
*22 Iverson Walker, Esq., 1900 Mercantile Bank Bldg., Dallas, Tex., and Edward L. Wilson, Esq., for the petitioners. W. B. Riley, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in income tax and penalties thereon as follows: Delinquency
Docket No.
Petitioner
Year
Deficiency
Penalty
30094
Beth Kenyon
1946
$1,661.76
30097
Ella Byron Kenyon
1946
1,661.76
30099
Ralph Kenyon
1946
1,546.45
30101
Patsy Ruth Kenyon
1946
1,546.45
30103
National Home and Auto Stores, An As-
sociation (Dissolved)
Period 3/6/46
to 4/30/46
3,923.19
$980.80
30095
Beth Kenyon, Transferee
Period 3/6/46
to 4/30/46
3,923.19
980.80
30096
Ella Byron Kenyon, Transferee
Period 3/6/46
to 4/30/46
3,923.19
980.80
30100
Ralph Kenyon, Transferee
Period 3/6/46
to 4/30/46
3,923.19
980.80
30102
Patsy Ruth Kenyon, Transferee
Period 3/6/46
to 4/30/46
3,923.19
980.80
The deficiency and penalty of the National Home and Auto Stores, an association taxable as a corporation, has been determined against the individual petitioners as *23 transferees of the assets of the association. The issues presented in these consolidated proceedings are: (1) Was the business of National Home and Auto Stores, during the period March 6, 1946, to May 1, 1946 (sometimes herein called "the short period"), a partnership or a corporation? (2) If a partnership, was the income therefrom during said period taxable in the amount of 25 per cent each, or 12.85 per cent each to Beth Kenyon, Ella Byron Kenyon, Ralph Kenyon and Patsy Ruth Kenyon? (3) In the alternative, was the business during said period an association, taxable as a corporation? If so, (a) was it a separate entity from the successor corporation; (b) is it liable for delinquency penalty for delayed filing of tax return; (c) did the individual petitioners receive dividends from it includible in their individual taxable income; (d) are the individual petitioners liable as transferees for the income tax liability of the association during said period? (4) Should the distributive income of the partnership for the period prior to March 6, 1946, be increased by the amount of $5,000 as a result of respondent's determination that it was unreported income? Findings of Fact
*24 Some of the facts are stipulated and are so found. On or about July 27, 1945, a partnership known as the National Home and Auto Stores (hereinafter sometimes referred to as the Partnership), was organized by petitioners, Beth Kenyon and Ella Byron Kenyon, his wife, and Ralph Kenyon and Patsy Ruth Kenyon, his wife, as partners sharing equally in profits and losses. Initially this partnership operated a retail home and auto supply store in Ardmore, Oklahoma, but later it became a wholesale distributor of the same merchandise. The headquarters of the business was moved from Ardmore to Oklahoma City about the beginning of the year 1946. The partnership books were kept on an accrual basis. Petitioners filed income tax returns for the taxable years involved with the collector of internal revenue for the second district of Texas, and all were seasonable except the one in Docket No. 30103. The corporation return filed by the National Distributing Company for its fiscal year ended April 30, 1947, reported a net loss in the amount of $36,973.11. The return for the National Home and Auto Stores, an association, for the period March 6, 1946, to April 30, 1946, reported a net income of $17,496.90 *25 and this income was reduced by a claimed net operating loss carry-back deduction of $36,973.11, which was the amount of the loss sustained by the National Distributing Company for its fiscal year ended April 30, 1947. After the move to Oklahoma City in the early part of 1946, the Partnership engaged in the wholesale distribution of home and auto supplies. This merchandise was sold to independently owned retail stores which operated under a franchise purchased from the Partnership. The independent stores operated under the name of National Home and Auto Stores. Sometime prior to March 6, 1946, the four partners entered into discussions with some of their employees and others concerning the prospect of incorporating and expanding the business. As a result of these discussions, Ralph Kenyon and an attorney prepared an instrument designated as "Plan Of Incorporation", setting forth the principal terms of the discussions. Each of the four partners executed this agreement on or about March 6, 1946. The plan provided in part as follows: "The purpose of this Plan of Incorporation is to outline the basis for the formation of a corporation which will take over and expand the operation *26 of the company known as National Home and Auto Stores, referred to hereafter as the partnership. * * * It is believed that the prosperity of all parties participating in this operation, including the employees of the company, the operators of the stores, the owners of the partnership, and other interested parties, will be increased by the incorporation of this business. It is desired in this Plan of Incorporation to describe a plan which will enable the employees of the company, the owners of the retail stores, and other interested parties, to share with the founders of the company in the profits and ownership of the business. "It is therefore proposed to incorporate a company under the laws of the State of Oklahoma, to be known as National Distributing Co., hereafter referred to as the corporation, said corporation to operate under the terms of an Article of Incorporation to be filed on May 1, 1946. "The corporation will be capitalized at $70,000.00, to be divided into 2800 shares at par value of $25.00 each. * * * The rights, duties, and powers of the stockholders, the Board of Directors, and the officers shall be stated in the By-Laws, which By-Laws shall be in conformance with *27 the laws of the State of Oklahoma, and shall be approved by a majority vote of the stockholders. "The stock of the corporation shall pay an annual dividend of 6% of the par value thereof, subject to the terms of the By-Laws, and each share of stock shall participate equally in the profits of the corporation. "The sale of capital stock in the corporation shall be made under the terms of subscription agreements. This Plan of Incorporation is, and is hereby agreed to be, part of the terms of said subscription agreements. Each subscriber to the capital stock of the corporation other than the partnership agrees that payment for all capital stock subscribed to shall be made immediately to the National Home and Auto Stores, which partnership is to be purchased by the corporation, as below stated. It is further agreed by each subscriber to the capital stock of the corporation, and by the partnership, that all capital stock of the corporation shall participate in the profits or losses of the partnership from March 6, 1946, (the date of a statement of "FINANCIAL CONDITION, NATIONAL HOME AND AUTO STORES, March 6, 1946") to May 1, 1946, the date of incorporation, in the same manner as said *28 stock shall participate after incorporation; and the subscribers to said capital stock hereby agree that all sums paid in for the purchase of said stock as aforesaid together with any profits accrued from the period from March 6, 1946, to May 1, 1946, shall be exchanged for stock in the corporation as soon as said stock is issued, and subject to the terms of the subscription agreements and this Plan of Incorporation. The corporation will purchase and operate the partnership, subject to the following conditions: "1. The assets purchased from the partnership by the corporation are listed in a statement called "Financial Condition, National Home and Auto Stores, March 6, 1946", which statement is incorporated herein, and made a part of this Plan of Incorporation. "2. No assets of the partnership are to be transferred to the corporation other than those enumerated in said agreement. "3. The corporation will assume all liabilities of the partnership which are listed in said statement. "4. The corporation will assume no liabilities of the partnership other than those listed in said statement. "5. The following assets of the partnership are not to be transferred to the corporation *29 but are reserved by and will remain, the property of the partnership: "a. One 1941 model Buick, Roadmaster, four door sedan, automobile, 1946 license number 124885. "b. The house and lot located at 2233 Northwest 26th, Oklahoma City, Oklahoma. "c. The house and lot located at 2536 Northwest 29th, Oklahoma City, Oklahoma. "6. In exchange for said assets the partnership is to receive 1440 shares of the capital stock of the corporation, said shares to be divided as follows: Patsy Ruth Kenyon
360 shares
Ella Byron Kenyon
360 shares
Beth Kenyon
360 shares
Ralph Kenyon
360 shares
"Ralph Kenyon and Beth Kenyon, the active managers of the partnership, agree to serve as officers of the corporation, in capacities to be determined by the Board of Directors, from March 6, 1946, to January 1, 1947, at a salary of $500.00 per month, each. "It is agreed that immediately after the formation of the corporation the partnership will be dissolved, but that the trade name 'National Home and Auto Stores' shall be owned by the corporation, and shall continue to be the trade name of the retail stores. "The statement of the financial condition which is referred to in the *30 plan is as follows: FINANCIAL CONDITION OF NATIONAL HOME AND AUTO STORES MARCH 6, 1946 NET WORTH - Per Statement
3/6/46
$19,363.67
Value of business sold in ad-
vance 3/6/46 $177,100 at 5%
8,855.00
Value of goodwill, including
a. Future business assured
by existing franchises
b. Future franchises to be
closed as a result of con-
tracts already made
c. Value of buying connec-
tions
d. Value of funds spent in
training existing personnel
e. The ownership of the trade
name 'National Home &
Auto Stores' together with
all the goodwill attached
thereto
f. All other elements of
goodwill
7,781.33
$36,000.00
"The subscription agreement is as follows: "SUBSCRIPTION AGREEMENT "I, , hereby subscribe to shares of the capital stock of the National Distributing Company, at the par value thereof, $25.00 per share subject to the terms of the Plan of Incorporation of said corporation, said Plan of Corporation being incorporated herein and made a part hereof. "Signed: "Received of the sum of for shares of the capital stock of the National Distributing Company. Signed: " An inventory of partnership assets was taken on March 6, 1946. The accounting *31 records of the business were closed as of March 6, 1946, and a new set of records for the business was opened, but in the partnership name of National Home and Auto Stores, as theretofore, which name it continued to use and be known by until May 1, 1946, when it assumed the name of National Distributing Company (hereinafter called the Corporation), and its business was thereafter transacted in the name of the Corporation, new books were set up, etc. A charter was issued to the Corporation by the State of Oklahoma on May 7, 1946. The date of application was not presented in evidence. Prior to May 1, 1946, the public and creditors of the business were not notified of any change in the business; however employees and salesmen were verbally informed that the business was being incorporated. Throughout the short period the bank account of the business and the signs on the business remained unchanged. Prior to March 6, 1946, the Kenyons withdrew funds from the business at will as needed. The basic amount agreed to for each partner was $250 per month. After March 6, Ralph and Beth Kenyon continued to manage the business but only withdrew sums approximating salaries envisaged in the plan *32 of incorporation. Within ten days after March 6, 1946, thirteen persons, mostly employees, had subscribed and paid in cash into the business $34,000 for stock in the proposed corporation at a par value $25of a share, all of which at once went into the business, but stock was not issued therefor until after the Corporation was chartered. No stockholders' meeting was held prior to May 1, 1946. Each subscriber signed the "Subscription Agreement" in duplicate and received a copy of the plan of incorporation at the time of payment, the copy retained being a receipt for his payment, and each was then informed by Ralph Kenyon that his participation in the profits and losses of the business would begin on March 6, 1946. During the short period the business realized a taxable profit of $17,492.09 and on April 30, 1946, an erroneous bookkeeping entry was made showing the distribution of this profit equally to the investment accounts of the four Kenyons. This entry did not correctly reflect the facts nor the intention of the parties. The entire $17,492.09 went into the business and all owners shared proportionately therein. The business, during the short period, was operated as a partnership *33 with an invested capital of $70,000, of which the four Kenyons contributed $36,000 as enumerated in the plan of incorporation and financial statement, while the remaining $34,000 was paid in cash by the thirteen subscribers for stock in the proposed corporation. The four Kenyons each owned 12.85 per cent of the profits earned during the short period and the subscribers to stock in the Corporation owned the remainder. The following facts relate to the issue involving respondent's determination that $5,000 was unreported in the partnership income: National Home and Auto Stores maintained two bank accounts with the Exchange National Bank of Ardmore. These accounts had closing balances as of December 31, 1945, of $2,184.53 and $157.50 or an aggregate of $2,342.03. At the same time the business had an account with the Mercantile National Bank of Dallas, Texas. On January 11, 1946, there was deposited in the Mercantile National Bank to the account of National Home and Auto Stores a check in the amount of $5,000 drawn against the partnership account of the Exchange National Bank of Ardmore. This transfer of funds from the Ardmore bank to the Dallas bank was recorded in the 1946 partnership *34 journal by a debit entry to Mercantile National Bank of $5,000 and an offsetting credit entry to cash. Later the Exchange National Bank issued a cashier's check in the amount of $1,960.43; this amount, plus an exchange charge of $1, closed out the balance of the account of the National Home and Auto Stores in the Ardmore bank. No entries were made on the books of the Partnership during the period January 1 to March 6, 1946, to record any deposits in the Ardmore bank. However, on March 6, 1946, an adjusting entry was made to bring on to the books the aggregate balance of the Ardmore bank at the beginning of the year. In this adjustment $2,342.03 was debited to cash and $2,342.03 was credited to the Ardmore bank. A second adjusting entry was made whereby $6,091.75 was debited to cash and an aggregate of $5,000 was credited to the investment accounts of the Kenyons. The balance of $1,091.75 was credited to sales. During January 1946, National Home and Auto Stores made aggregate deposits of $3,719.39 in the Ardmore bank. The description of the alleged transactions for these deposits was given as follows: Prepayment of merchandise for future
delivery
$2,875.00
Partial payment of purchase price of
Ardmore store
300.00
Collection of freight claim
353.77
Collection of accounts receivable
58.50
Cash receipts from store sales - Ard-
more store
91.02
Unidentified
41.10
Total
$3,719.39
*35 Early in 1946 the Partnership voided a $900 check which was drawn on the Ardmore bank sometime in 1945. The voiding was not recorded on the partnership books in 1946. The Partnership kept a cash journal, and in it kept entries relating to cash receipts and cash disbursements of the business between January 1, 1946, and March 6, 1946. The debit entries represented cash receipts, and the credit entries represented bank deposits. For this period the total of credits exceeded the total of debits in the amount of $8,682.35. This excess represented bank deposits in excess of recorded cash receipts. Of this total amount $3,682.35 ($2,342.03 plus $1,091.75 plus $248.57) was not in dispute. The evidence fails to show that the $2,875 item "Prepayment of merchandise for future delivery" did not result in taxable income to petitioners, but as to all other items listed thereunder in the table above, aggregating $1,612.27, it appears from the evidence that they were transactions from which petitioners received no taxable income. Opinion A brief resume of the salient facts and contentions of the parties follows: The four Kenyons were equal partners engaged in business under the name of *36 National Home and Auto Stores. A proposal to incorporate the business was formulated. A "PLAN OF INCORPORATION" was drafted and executed by the partners on March 6, 1946. This plan enumerated what would be the essential elements and conditions of a corporation, the National Distributing Company, to be formed May 1, 1946. The business as operated between March 6, 1946, and April 30, 1946, herein referred to as the short period, reported a profit of $17,492.09. The Corporation, National Distributing Company, received a corporate charter from the State of Oklahoma on May 7, 1946. For the fiscal year May 1, 1946, to April 30, 1947, the Corporation reported a loss of $36,973.11, and in its income tax return used this loss as a net loss carry-back deduction to wipe out the net income of the business for the short period. The primary question here presented is to whom should the profits or distributive income of the business during the short period, amounting to $17,492.09, be taxed. Respondent has determined that the business during the short period continued to be owned and operated as a partnership by the four Kenyons and that each is taxable on 25 per cent of such profits. Petitioners *37 contend that the business during the short period was that of the Corporation, and profits therefrom were taxable to it, and in the alternative that if there was a partnership, the four Kenyons during the short period each owned and is taxable on only 12.85 per cent of such profits, rather than 25 per cent. If we hold the business during the short period was not a partnership, then we must consider respondent's alternative plea that it was an association taxable as a corporation; the penalty for delayed filing of the return; the disallowance of the carry-back deduction, and the Kenyons' liability as transferees. Considering the evidence and record as a whole, we think the business during the short period was operated as a partnership and not a corporation. We agree with respondent that the Corporation "did not exist either in fact or in law prior to May 1, 1946, and the business was not conducted in its behalf prior thereto". We can not agree with petitioners that a de facto corporation existed prior to May 1, 1946. , cited by them does not sustain this contention. It is there held that *38 the three essentials for a de facto corporation are: (1) a valid law under which the incorporation is possible; (2) a bona fide attempt to organize a corporation under such law, and (3) an actual exercise of corporate powers. Here requirements (2) and (3) are lacking. Oklahoma statutes prescribe the steps necessary to incorporate, 18 Okla. St. Ann., chapter 1, none of which, prior to May 1, were complied with or attempted to be complied with. See also ; 8 Fletcher Cyc. Corp. 71. Here we do not have even a colorable compliance with requirement (2). Here also, prior to May 1, there was no "actual exercise of corporate powers". Throughout the short period the business was conducted in the name of the Partnership as theretofore, and no business whatever was transacted under the corporate name. Ralph and Beth Kenyon managed and operated the business during the short period the same as theretofore. The bank accounts were maintained in the partnership name. The original partnership books were closed on March 6, 1946, but instead of setting up corporate books with corporate capital accounts, books almost identical to the original books were set *39 up. Prior to May 1, the public and the creditors were not formally notified of any change in the business form. When Ralph Kenyon was queried about what notice was given concerning the purported change in business from, he replied: "During this two-month period that is in question, Beth and I came down to Dallas and had a conversation with Mr. Milton Brown, who is President of the Mercantile National Bank, with whom we had a line of credit, and in that conference with him we explained to him what we were doing with reference to the incorporation of our company. That bank was our principal creditor." This can not be construed as notice that the business was then a corporation. There was some evidence that certain salesmen and the partnership employees were told that the business was being incorporated. That it was the intention of the parties to continue the business as a partnership until May 1, 1946, is clearly revealed in the plan of incorporation, from which we quote: "It is agreed that immediately after the formation of the corporation the partnership will be dissolved, but that the trade name "National Home and Auto Stores" shall be owned by the corporation, and shall *40 continue to be the trade name of the retail stores. [Italics supplied.]" This case is distinguishable from , relied on by petitioners. There the court stated: "In the present case the incorporators: (a) held themselves out as a corporation; (b) made deposits in the bank, acquired leases, wrote checks, bought land, executed leases, collected rent, borrowed money, accepted contributions - all in the name of the corporation. [Italics supplied.]" Here no acts were performed in the name of the Corporation during the short period, but all were in the name of the Partnership. The facts here more nearly resemble those in ; affd., (C.A. 3) , where it was held that business transacted in the name of an existing corporation was not transacted on behalf of a proposed and successor corporation not yet incorporated. Holding as we do that the business was operated during the short period as a partnership and not by the Corporation or its agent, we therefore sustain respondent's determination that the profits and distributive income therefrom *41 during such period did not belong to and are not taxable to the Corporation, and hence can not be used by it as a carry-back deduction. However, we do not sustain respondent's determination that all of the distributive income during the short period belonged to the four Kenyons and is taxable to them in the amount of 25 per cent each. On the contrary, we sustain petitioners' alternative plea that during the short period the four Kenyons each owned only 12.85 per cent of the assets of the Partnership and the profits accruing therefrom, and are each taxable on 12.85 per cent of the profits during that period, rather than 25 per cent, as determined by the respondent. While the business during the short period continued to be operated as a partnership, the capital investment and ownership thereof was changed, effective March 6, 1946, so that the interest of each of the Kenyons was reduced from 25 per cent to 12.85 per cent. Throughout the short period the capital of the business was $70,000, of which $36,000 was ratably contributed by the four Kenyons by transfer of assets described in the statement of the financial condition dated March 6, 1946, together with the good will of the *42 business, while the remaining $34,000 was paid in cash by the stock subscribers. This contribution to capital by the stock subscribers made them owners of a proportionate interest in the business and under law and equity entitled them to share in its profits. Also it was agreed between the Kenyons and the stock subscribers, both orally and in writing, as expressed in the plan of incorporation, that the subscribers "shall participate in the profits or losses of the partnership from March 6, 1946, to May 1, 1946, the date of incorporation". Because of an erroneous bookkeeping entry crediting the investment accounts of the Kenyons with all profits accruing during the short period, respondent contends that the Kenyons received the entire economic benefits of such profits and hence are taxable on them. The facts show that the entry did not correctly reflect what was actually done or the intention of the parties; since all of the profits during the short period went into the business and all of the contributors shared in them. "Economic realities cannot be ignored because of entries in books". Commissioner v. H. E. Harman Coal Corp., ( C.A. 4) - Fed. (2d) -, decided September 17, 1952. *43 We fail to see the pertinency or applicability of , or , cited by respondent. These cases deal with the liability of stock subscribers to creditors of the corporation, whereas the point here involved is the right to share in profits as agreed upon by the parties themselves. We hold that the four Kenyons, petitioners in Docket Nos. 30094, 30097, 30099 and 30101, are each taxable on 12.85 per cent of $17,492.09, the profits of the business during the short period. Our holding that the business during the short period was conducted as a partnership makes it unnecessary to consider respondent's alternative plea that if not a partnership it was an association taxable as a corporation, and also negatively disposes of the deficiency and delinquency penalties imposed and predicated on such plea in each of Docket Nos. 30103, 30095, 30096, 30100 and 30102. Also petitioner's erroneous filing of a tax return for an association taxable as a corporation, thereafter abandoned by them, does not subject them to liability thereunder or to a delinquency penalty in the filing, *44 since under our holding no such taxable entity existed. The second primary issue is whether the partnership distributive income should be increased by $5,000 as determined by respondent. The facts pertaining to this issue show that the partnership deposits at the Exchange National Bank of Ardmore, which had an aggregate balance of $2,342.03 on January 1, 1946, were not reflected on the partnership books prior to March 6, 1946. On March 6 an adjusting entry was made to bring the aggregate balance on the books. A like adjusting entry was made whereby an aggregate of $5,000 was credited to the four Kenyons' investment accounts and $1,091.75 was credited to sales. This $6,091.75 was offset by a debit to cash. It is respondent's contention that this $5,000 entry recording a credit to the Kenyons' investment accounts represents certain incomeproducing transactions which were not recorded on the partnership books, and money which was deposited in the Ardmore bank. The use of these adjusting entries brought the books into balance, but in so doing avoided the profits and loss accounts or the sales accounts. The partners contend that the $5,000 in question represented cash receipts from *45 transactions which did not result in taxable income to the Partnership nor to any of the partners individually. In support of this contention the partners allege that $4,487.27 of the $5,000 can be accounted for by the following transactions and deposits in the Ardmore bank during January 1946: Prepayments of merchandise for future
delivery
$2,875.00
Partial payment of purchase price of
Ardmore store
300.00
Collection of freight claim
353.77
Collection of accounts receivable
58.50
1945 check for prepaid rent voided
900.00
Total
$4,487.27 No explanation is made for the difference between $5,000 and $4,487.27. A determination by the respondent that income accrued in a certain period puts the burden on the taxpayer to prove otherwise. See . The evidence as to the $2,875 prepayment of merchandise does not give us sufficient information to determine whether the three prepayments aggregating this amount were taxable income or not. Ralph Kenyon, testifying for petitioners about this matter, said that they were made as advance payments for merchandise "which we were to ship later". And when asked how such *46 payments by customers were handled on petitioners' books, replied: "Well, they were supposed to be set up as liabilities until such time as we shipped the merchandise, and then the money was put into sales". The record fails to show that this was ever done as to these payments. What was "supposed" to be done is no proof of what was done. Petitioners having failed to meet their burden of proof as to the $2,875 item, the respondent's determination relative thereto is sustained. As to the other four items listed above, aggregating the sum of $1,612.27, covering partial payment of purchase price of the Ardmore store, collection of freight claim, collection of accounts receivable, and voiding of the $900 check, we hold as to all of these items that petitioners have sustained their burden of proof and that the transactions involving each of same did not result in taxable income to petitioners, and accordingly to that extent respondent's determination on this issue is reversed. Decisions of no deficiency will be entered in Docket Nos. 30095, 30096, 30100, 30102 and 30103, and under Rule 50 in Docket Nos. 30094, 30097, 30099 and 30101.